25-mj-8472-PGL

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Daniel Murphy, being sworn, state as follows:

## INTRODUCTION

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been since March of 2022. I am currently assigned to the Boston Field Division.

2. I am a graduate of the Federal Law Enforcement Training Center, where I completed ATF Special Agent Basic Training and the Criminal Investigator Training Program. Prior to my employment with ATF, I was a police officer with the Northborough Police Department in Northborough, MA for six years. While working with the Northborough Police Department, I was assigned as a field training officer and was a certified sexual assault investigator. I completed my basic police training at the Massachusetts State Police Municipal Academy. I have received advanced training in drug investigations through the Northeast Counterdrug Training Center, and in digital investigations through the Municipal Police Institute.

3. Currently, I am assigned to a group in the Boston Field Division of the ATF that, in part, works with other federal, state, and local police departments to investigate and prosecute violations of the federal firearms, explosives, and controlled substance laws. My duties include working as a liaison between federal, state, and local law enforcement entities in the investigation of illegal distribution of narcotics, firearm offenses, and associated gang-related violent crimes. In the course of participating in investigations of drug distribution/trafficking, I have conducted or participated in surveillance, the purchase of illegal drugs and firearms, the execution of search warrants, debriefings of subjects, witnesses, and informants and reviews of consensually recorded conversations and meetings. Through my training, education, and

experience, I have become familiar with the manner in which drug traffickers conduct their illegal drug trafficking activity, to include their use of cellular telephones to contact drug customers, drug runners, drug associates, and sources of illegal drug supply. I am familiar with narcotics traffickers' methods of operation, including distribution, storage, and transportation of narcotics.

4. Based on my training and experience as a Special Agent, I am familiar with federal narcotics laws. I know that it is a violation of Title 21 U.S.C. § 841(a)(1) for any person to possess with intent to distribute a controlled substance.

## PURPOSE OF AFFIDAVIT

5. I submit this affidavit in support of an application for a complaint alleging that, on or about October 3, 2025, Trevor HEADLEY ("HEADLEY"), born in 1993, did possess with intent to distribute cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

6. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the ATF and other federal, state and local law enforcement agencies.

7. I submit this affidavit for the limited purpose of establishing probable cause to believe HEADLEY has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## PROBABLE CAUSE

I. Background

8. The ATF and the Drug Enforcement Administration ("DEA") are investigating a drug trafficking organization ("DTO") involving HEADLEY, who has been selling cocaine in

the greater Boston area. Under the ATF's direction, ATF investigators have made at least two controlled buys of narcotics from HEADLEY using an ATF undercover investigator (the "UC"), which were audio and video recorded. Following these controlled buys, the purchased narcotics were laboratory tested and confirmed to contain cocaine.

9. Since these controlled buys, including during August of 2025, the investigation has continued. This investigation has also included recorded communications with HEADLEY indicative of drug and firearm trafficking, including communications on various dates between August and October of 2025.

10. On August 20, 2025, the UC had a recorded phone call with HEADLEY on the TARGET PHONE. During this call, the UC indicated to HEADLEY that the UC was seeking to purchase firearms for future sale in Canada. HEADLEY then informed the UC that he had recently sold a Glock 30 pistol and was seeking a source for firearms.

11. On September 10, 2025, the UC had an additional recorded phone call with HEADLEY on the TARGET PHONE. On this call, HEADLEY informed the UC that he was planning on placing an order of cocaine from his source of supply on September 12, 2025 and inquired if the UC needed more narcotics. HEADLEY informed the UC that he could get a "whole one" for the UC. Based on my training and experience, I believe that HEADLEY was referring to one kilogram of cocaine. During the same phone call, the UC informed HEADLEY that he found a source for firearms and asked if HEADLEY was interested in purchasing any firearms. HEADLEY stated that he was seeking a latest generation Glock 26 and Glock 27 pistol. When the UC stated he could obtain these, HEADLEY stated that the price for the kilogram would be negotiated based on these firearms being included in the deal. Additionally, HEADLEY stated that he would include his Springfield Hellcat pistol in the deal.

12.     A short time after the UC ended the call, HEADLEY called the UC back using the TARGET PHONE. HEADLEY asked the UC if he could obtain "buttons." Based on my training and experience, I believe HEADLEY was requesting machine gun conversion devices ("MCD's"), which can be installed on Glock pistols to convert them to machineguns. HEADLEY informed the UC that he was seeking 3-4 "buttons." The UC informed HEADLEY he could obtain them for him. The UC further informed HEADLEY that he could obtain metal MCDs as opposed to plastic MCDs which are prone to failure. This call was recorded.

13.     On September 16, 2025, the UC placed another recorded phone call to HEADLEY on the TARGET PHONE. On this call, HEADLEY indicated that the kilogram of cocaine the UC had ordered was due to arrive between September 22 and October 3, 2025. HEADLEY stated that he might be able to obtain 62 grams of cocaine for the UC before the kilogram of cocaine arrived. HEADLEY, however, indicated that he would have to pick that up from another person.

**II.     Search Warrants Executed on October 3, 2025**

14.     On or about October 3, 2025, the UC placed a recorded phone call with HEADLEY to arrange for the purchase of 1 kilogram of cocaine for 3 MCD's. During that phone call, HEADLEY stated that he was no longer interested in the Glock pistols the UC had shown him photos of as they were not the latest models. HEADLEY informed the UC that the cocaine was due to arrive between 1:00pm – 6:00pm that day. Subsequently, surveillance observed HEADLEY leaving his residence[1] in Newton, MA at approximately 2:00pm. HEADLEY was not carrying any bags when leaving his apartment. He was surveilled to a parking lot in

---

[1] I am aware of HEADLEY's residential address, hereinafter referred to as the TARGET LOCATION. I am not including that specific address for the purpose of this affidavit in support of a criminal complaint.

Cambridge, MA. HEADLEY parked in the back parking lot area. At approximately 3:06pm, a Toyota Rav4 entered the parking lot and parked near HEADLEY. The operator of this vehicle exited his vehicle and entered HEADLEY's front passenger seat. This individual then exited HEADLEY's vehicle, returned to the Rav4 and left the area. HEADLEY remained in the parking lot. At approximately 5:00pm, a white Ford Explorer entered the lot and parked near HEADLEY. A black male in a red shirt exited the vehicle and entered HEADLEY's vehicle for a short time. The male then exited HEADLEY's vehicle, returned to the Ford Explorer, and left the area. HEADLEY then left the Cambridge parking lot and returned directly to his residence, the TARGET LOCATION. Upon his return, HEADLEY was observed entering the TARGET LOCATION carrying a grey and black bag.

15. Approximately 10 minutes later, agents observed HEADLEY exiting his residence and detained him as a federal search warrant for his residence, vehicle, and person were executed, 25-mj-7502-7505-MPK. Upon entering HEADLEY's apartment, investigators located the grey and black bag in the bedroom closet. The grey and black bag contained two white shipping envelops consistent with the size, shape, and weight of a pressed kilogram of cocaine. Additionally, on a shelf in the same closet, investigators located a manilla shipping envelope of the same size, shape, and weight of those located in the grey and black bag. Based on my training and experience, the training and experience of other investigators familiar with the case, the prior controlled buys, and the conversations between the UC and HEADLEY prior to the execution of the search warrants, I believe that these items are kilograms of cocaine packaged in a way typical of trafficking and transporting cocaine. These kilograms were sealed in evidence bags and are pending laboratory analysis.

16. Additionally in the bedroom of HEADLEY's residence, investigators located approximately $32,574 in cash, gold jewelry, clothing consistent with the size and style of clothing HEADLEY is known to wear, and HEADLEY's passport.

17. Based on my training and experience, as well as that of other law enforcement officers familiar with this investigation, I believe the packages located in the grey and black bag, which HEADLEY had been observed bringing into his residence, and the package located on the closet shelf, contains cocaine. The packages weighed approximately 1284.2 grams, 1335.9 grams, and 1314 grams respectively. Based on my training and experience, the prior controlled buys, the calls between HEADLEY and the UC, the standardization of packaging, and the weight of the suspected cocaine all indicate HEADLEY's intent to distribute the cocaine that he possessed at the TARGET LOCATION.

## CONCLUSION

18. Based on the foregoing, there is probable cause to believe that on October 3, 2025, HEADLEY did knowingly and intentionally possess with intent to distribute cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

*Daniel Murphy /by Paul G. Levenson*
Daniel Murphy
Special Agent, ATF

Signed electronically and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on this 5th day of October, 2025.

HON. PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS